IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2021-cv-5212 |
| | ) | |
| | ) | Judge Sara L. Ellis |
| AMERICAN BODY COMPANY, | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| Defendant. | ) | |

**PLAINTIFF'S MOTIONS IN LIMINE AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

NOW COMES the Plaintiff William Anderson, by and through his undersigned attorneys, submits his Motions in Limine and Memorandum of Law in Support Thereof:

**I.      Plaintiff's First Motion in Limine: Bar Reference to Unemployment and Social Security Compensation.**

Plaintiff moves this Court to issue an Order barring Defendant from introducing into evidence or making any reference in this case to any unemployment or social security compensation Plaintiff received following his termination. And this Court should refuse to offset Plaintiff's unemployment benefits and social security income on the basis that such compensation is collateral to backpay.

Unemployment benefits are collateral to backpay, because they are paid for by the government, out of government funds, and not by Defendant. Such benefits are paid, not to discharge any liability or obligation on the part of Defendant, but to advance wholly distinct policy considerations, such as social betterment of the entire state. *See NLRB v. Gullett Gin Co.*, 340 U.S. 361 (1951); *see also Stragapede v. City of Evanston*, 125 F. Supp. 3d 818 (N.D. Ill. 2015). "The

1

Seventh Circuit imposes no requirement that unemployment insurance benefits be deducted from a backpay award." *Certified Midwest, Inc. v. Local Union No. 738*, 686 F. Supp. 189, 193 (N.D. Ill. 1988) (citing *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1429 (7th Cir. 1986); *see also EEOC v. Corinth, Inc.*, 824 F. Supp. 1302 (N.D. Ind. 1993).

Social Security benefits also are collateral, and allowing a defendant to deduct social security payments from a back pay award would confer on the defendant a "discrimination bonus." *Tomao v. Abbott Labs., Inc.*, No. 04 C 3470, 2007 U.S. Dist. LEXIS 3274 (N.D. Ill. Jan. 16, 2007), citing *EEOC v. O'Grady*, 857 F.2d 383, 391 (7th Cir. 1988).

Therefore, Plaintiff moves for an order instructing Defendant, its attorneys and witnesses, to refrain from any reference to any unemployment compensation or social security benefits paid to Plaintiff following his termination by Defendant.

**II.     Plaintiff's Second Motion in Limine: Bar Reference to EEOC Finding or Right to Sue.**

Plaintiff moves this Court to issue an Order barring Defendant from introducing into evidence or making any reference to the EEOC finding or right to sue in this case.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC, having held neither a fact-finding conference, nor interviews of American Body Company witnesses in the case, issued Plaintiff a right to sue notice.

Federal Rule of Evidence 801 defines hearsay as an out of court statement offered in court to prove the truth of the matter asserted. Fed. R. Evid. 801. Pursuant to Federal Rule of Evidence 802, hearsay is not admissible unless the statement falls under an exception set forth in the rules, or otherwise provided under federal law. Fed. R. Evid. 802.

EEOC findings are determinations made out of court. Thus, when offered to prove the truth of the matter asserted in court, such determinations are subject to the rule against inadmissible

hearsay. Fed. R. Evid. 802, *see also Tulloss v. Near N. Montessori School*, 776 F.2d 150 (7th Cir. 1985). Therefore, to be admissible, the EEOC determination must fall within an exception to the rule against inadmissible hearsay.

When based on reliable, factual findings, an EEOC determination can fall within the public records exception to the hearsay rule. Fed. R. Evid. 803(8)(A). If the EEOC determination is conclusory—and not based on factual findings garnered through agency investigation of the claim—the reliability of the evidence is called into question, rendering the EEOC determination untrustworthy. Fed. R. Evid. 803(8)(B), *see also Tulloss*, 776 F.2d at 153. Under such circumstances, the EEOC determination will not fall under a hearsay exception, and therefore will not be admissible. *See id.*; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988).

The EEOC determination is not relevant evidence pursuant to Fed. R. Evid. 401; rather, it is a prerequisite for filing a legal complaint alleging employment discrimination. Fed. R. Evid. 401. *Plummer v. Chicago Journeyman Plumbers' Local Union*, 452 F. Supp. 1127 (7th Cir. 1978).

Furthermore, the EEOC determination would also be unfairly prejudicial pursuant to Fed. R. Evid. 403, because, if admitted, it would suggest that the jury should rely on the EEOC determination, and not its own consideration of the evidence—which will be vastly more extensive than that considered—or not considered—by the EEOC. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000).

Additionally, the introduction of the EEOC determination will be a waste of time, requiring exclusion under Fed. R. Evid. 403, as Defendant will have to take extra steps to prove the circumstances under which the determination was entered, as well as the inaccurate information on which the determination was based. Therefore, admission of said evidence will add nothing to the trial except additional time. Fed. R. Evid. 403, *see also Tulloss*, 776 F.2d at 154.

Based on the foregoing, evidence of the EEOC determination and right to sue must be excluded. Accordingly, Plaintiff moves for an order instructing Defendant, and its attorneys and witnesses, to refrain from any reference to the EEOC finding or introduction of any evidence concerning the EEOC determination or its attendant right to sue.

**III.     Plaintiff's Third Motion in Limine: Bar Reference to Plaintiff's Alleged Failure to Mitigate Damages.**

Plaintiff moves this Court to issue an Order barring Defendant from introducing into evidence or making any reference in this case to any alleged failure by Plaintiff to mitigate his damages.

We believe that Defendant intends to argue affirmatively that Plaintiff failed to properly mitigate his damages. Though it is a plaintiff's responsibility to mitigate his damages following termination, it is well-established that it is a defendant's burden to show the plaintiff's actions were insufficient to mitigate those damages. *Hutchinson v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037 (7th Cir. 1994); *Brown v. Smith*, 827 F.3d 609 (7th Cir. 2016); *Gracia v. Sigmatron Int'l., Inc.*, 130 F. Supp. 3d 1249 (N.D. Ill. 2015). This burden does not fall on the plaintiff or his attorney. *Sprogis v. United Airlines, Inc.*, 517 F.2d 387 (7th Cir. 1975).

To avail itself of the affirmative defense of failure to mitigate damages, Defendant must establish (1) Plaintiff failed to exercise reasonable diligence to mitigate his damages; and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. *See Hutchinson*, 42 F.3d at 1044. Here, Defendant has failed to establish either of the necessary prongs to support its claim that Plaintiff failed to mitigate his damages.

Though Plaintiff testified he was unable to obtain employment between his termination in May 2021 and the end of the 2021 calendar year, he also testified he attempted to find substitute employment following his termination. Defendant has offered no evidence to refute this. Plaintiff's

4

attempt was honest and made in good-faith; thus, it need not have been successful. *See Smith v. Great Am. Rests.*, 969 F.2d 430 (7th Cir. 1992).

Defendant offers no evidence whatsoever to establish there was a reasonable likelihood that Plaintiff would have found comparable work during the relevant time period. Thus, regardless of any evidence offered in support of the first prong, Defendant's attempt to affirmatively argue failure to mitigate damages is thwarted by the absolute lack of evidence to prove the second prong. *See Gracia*, 130 F. Supp. 3d at 1257.

The only potential evidence of Plaintiff's failure to mitigate his damages is the passage of time, which, alone, is insufficient to establish the affirmative defense.

Given the foregoing, any suggestion that Plaintiff failed to mitigate his damages, absent sufficient proof of the same, would serve to confuse the jury and thereby unfairly prejudice Plaintiff, pursuant to Fed. R. Evid. 403.

Therefore, Plaintiff moves for an order instructing Defendant, its attorneys and witnesses, to refrain from any reference to Plaintiff's alleged failure to mitigate his damages.

**IV.** **Plaintiff's Fourth Motion in Limine: Bar Defendant from Disputing that Bob Pape made the decision to terminate Mr. Anderson with Eileen Pape and Piotr Kozub.**

Plaintiff moves this Court to issue an Order barring Defendant from introducing into evidence or argument attempting to dispute the agreed fact that Bob Pape made the decision to terminate Mr. Anderson with Eileen Pape and Piotr Kozub. As this Court already has observed, "[t]he parties agreed in their Joint Statement of Undisputed Material Facts that Mr. Pape made the decision to terminate Mr. Anderson with Ms. Pape and Mr. Kozub. Doc. 34 ¶ 40." Order, at 8 (Doc. 52) (attached at Exhibit A).

5

**V.     Plaintiff's Fifth Motion in Limine: Bar Non-Testifying Witnesses from the Courtroom.**

Plaintiff moves this Court to issue an Order barring any and all witnesses presented by either Plaintiff or Defendant from the Courtroom except while on the witness stand. This would apply to all potential witnesses except for Plaintiff William Anderson and Eileen Pape (as owner and president of Defendant American Body Company).

## CONCLUSION

Plaintiff William Anderson respectfully requests this Court to grant Plaintiff's motions in limine along with any other relief that this Court deems just and equitable.

Dated: October 27, 2023                                    Respectfully submitted,

                                                          WILLIAM ANDERSON

By: /s/ *Michael A. Faccenda*
One of His Attorneys
Michael A. Faccenda
901 West Hillgrove Avenue
La Grange, IL 60525
P: 708-497-3077 |
maf@faccendalawgroup.com


/s/ *Christopher P. Connors*
One of his attorneys
Christopher P. Connors
One of His Attorneys
P.O. Box 2255
La Grange, IL 60525
Phone: 708-782-0800
cpc@connors.co

Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM ANDERSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN BODY COMPANY, )<br>)<br>Defendant. ) | No. 21 C 5212<br><br>Judge Sara L. Ellis |

### OPINION AND ORDER

Defendant American Body Company ("American Body") terminated its long-time employee, Plaintiff William Anderson, in May 2021. Mr. Anderson, who at the time was seventy-five years old, subsequently filed this lawsuit against American Body, alleging that his termination violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.* American Body has moved for summary judgment on Mr. Anderson's claims. Because questions of fact exist as to whether Mr. Anderson's age caused his termination, the Court denies American Body's motion for summary judgment.

### BACKGROUND[1]

American Body, headquartered in Crestwood, Illinois, is a repair and maintenance company for beverage delivery vehicles. American Body services customers in approximately twenty states, with eighty percent of its customers located outside of Illinois. Eileen Pape owns American Body, having bought out the shares of her husband, Bob Pape, sometime within the

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts, as well as the additional facts that Mr. Anderson included in his response and American Body included in its reply. The Court has included in this background section only those facts that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court takes all facts in the light most favorable to Mr. Anderson, the non-movant.

ten years before Mr. Anderson's termination in 2021. At the time of Mr. Anderson's termination, Mr. Pape was seventy-four years old and remained involved in American Body's operations as a consultant on its payroll. Piotr Kozub, American Body's operations manager and Mr. Anderson's supervisor, testified that, as a consultant, Mr. Pape did not issue instructions. Mr. Pape testified that, aside from pleasantries, he did not speak to Mr. Anderson in the approximately five years before Mr. Anderson's termination, while Mr. Anderson estimated he had around 500 conversations with Mr. Pape over that time period. And although Mr. Pape testified that he generally "avoid[s] making [termination] decisions," leaving those decisions to Mr. Kozub and Ms. Pape, he also acknowledged that he "oversee[s] what's going on." Doc. 34-5 at 6.

American Body has an employee manual, which it most recently revised in March 2019. The manual provides that because employment is at-will, both an employee and American Body have the "right to terminate . . . employment for any or no reason," while also specifying that "poor performance, misconduct, excessive absences, tardiness, discrimination, harassment, or other violations of Company policies" may serve as grounds for termination. Doc. 34-3 at 7; *see also id.* at 19 ("American Body Company has the right to terminate your employment, or otherwise discipline, transfer, or demote you at any time; with or without reason, at the discrimination of the Company."). The manual also indicates that "[e]mployees, whose work requires operation of a motor vehicle, must present and maintain a valid driver's license and a driving record acceptable to [American Body's] insurer" and that "[a]ny changes in [an employee's] driving record or classification may affect continued employment." *Id.* at 10. The manual further provides a non-exhaustive list of unacceptable activities, including "[v]iolation of any company rule; any action that is detrimental to the Company's efforts to operate profitably,"

"[v]iolation of security or safety rules or failure to observe safety rules or the Company's safety practices," "negligently causing the destruction or damage of company property," and "[s]peeding or careless driving of company vehicles." *Id.* at 12–13. Finally, the manual includes a disciplinary action policy, indicating that under normal circumstances, "[u]nacceptable behavior/conduct, which does not lead to immediate dismissal," would lead first to an oral warning, then a written warning, and finally, termination. *Id.* at 14–15.

Mr. Anderson began working at American Body in 1993, with his job duties including driving and delivering repaired trucks to customer sites. He received the employee manual at the time he began his employment. At the time of his termination, he held the position of driver supervisor, a job title no one else in the company had. Mr. Anderson had two drivers reporting to him, Alex and Tom, who both had valid interstate commercial driver's licenses ("CDL") that allowed them to service American Body's non-Illinois customers. As part of his historical job duties, Mr. Anderson had reviewed daily log sheets and specific mileage for drivers, a responsibility that he testified took him approximately three hours per month. But after a federal law required the computerization of log sheets, American Body's drivers began entering their mileage into an electronic device in their vehicles instead of recording the mileage manually. In other words, the change in federal law eliminated an aspect of Mr. Anderson's job duties. Mr. Kozub estimated that Mr. Anderson had stopped reviewing the log sheets at least six months before his termination, while Mr. Anderson indicates several years had passed.[2] Mr. Anderson also cut the grass and plowed the snow at American Body's facility.

---

[2] The Court takes judicial notice that the federal rule requiring electronic logging was published in December 2015, with the use of electronic logging devices made mandatory as of December 16, 2019. *See* U.S. Department of Transportation, *Fast Facts: Electronic Logging Device (ELD) Rule*, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/hours-service/elds/81541/usdot-fmcsaeld-rule-timeline.pdf.

3

Mr. Anderson first obtained an interstate CDL in the 1960s. He had two accidents in 2015 and 2016 while driving vehicles owned by American Body. He reported those accidents to American Body immediately, and American Body never disciplined him or questioned his ability to drive after the accidents. Sometime in 2015 or 2016, Mr. Anderson changed his CDL classification from interstate to intrastate. A doctor never advised him to change the classification on his CDL from interstate to intrastate, though Mr. Anderson testified that his health card indicated that he had high blood pressure, which restricted his ability to drive commercial vehicles out-of-state. According to Mr. Kozub, Mr. Anderson told him of the change in classification at some point after it occurred. Mr. Anderson testified that Mr. Kozub and Mr. Pape learned that he could only drive intrastate as early as 2015 or 2016, with Mr. Pape telling Mr. Anderson that he "was getting too old to go that far" after learning that Mr. Anderson's classification had changed due to his medical card. Doc. 34-2 at 11. Mr. Anderson understood Mr. Pape's comments to mean that American Body did not require him to drive out-of-state, nor did it have a problem with him leaving out-of-state driving to the other drivers.

In April 2021, Mr. Anderson's company car broke down, and Mr. Kozub gave him a substitute company car to use over the weekend. When Mr. Anderson returned to work the following Monday, Mr. Kozub told Mr. Anderson that Mr. Pape did not want Mr. Anderson driving any car that belonged to American Body. Subsequently, according to Mr. Anderson, Mr. Pape told Mr. Anderson that "he didn't want [Mr. Anderson] driving any company vehicles, that [Mr. Anderson] was getting too old." *Id.* at 18. Mr. Anderson recalls Mr. Pape also indicating that he was a "high risk, including with respect to insurance coverage," and thereafter asking Mr. Anderson how much longer he planned to work for American Body. *Id.* at 19. When Mr. Anderson indicated that he planned to work through the end of the year, Mr. Pape responded that

that was "too long" and that Mr. Anderson would "have to leave before then." *Id.* Mr. Pape denies making any such comments. Mr. Anderson acknowledges that he told Mr. Pape he could possibly leave at the end of the month. Nevertheless, on April 19, 2021, Mr. Anderson left a note for Mr. Pape indicating that he would be on vacation from April 26 through April 30 but he was "not resigning [his] position with the company and will be back at work on May 3, 2021 at [his] normal working time." *Id.* at 17.

On May 3, 2021, Mr. Kozub told Mr. Anderson that Mr. Pape wanted to see him. Mr. Anderson then went to see Mr. Pape, with Mr. Kozub and another employee also present. According to Mr. Anderson, Mr. Pape stated that "he had talked to his lawyers all weekend, and the only thing [Mr. Anderson] was entitled to was unemployment." *Id.* at 20. Mr. Anderson recalled responding, "well, I guess that's it. That's the end. You're letting me go, right?" *Id.* Mr. Anderson then turned in his company possessions and left.

Although Mr. Pape disclaimed having a role in termination decisions at American Body, he testified that he made the decision to terminate Mr. Anderson in consultation with Ms. Pape and Mr. Kozub based on the fact that Anderson did not have an interstate CDL license. Ms. Pape testified at her deposition to the same reasoning based on learning of the fact from American Body's insurance agent. On June 2, 2021, American Body's insurance agent reported to Ms. Pape in an email that Anderson had a valid license, had been issued a CDL medical info card in 2019, and that his restriction was for intrastate driving only.

In response to a letter sent to her by Mr. Anderson's attorneys, on May 31, 2021, Ms. Pape indicated that American Body terminated Mr. Anderson "due to changes in Federal Law which mandated the implementation of ELD [electronic logging device] record keeping for Commercial Vehicle drivers which eliminated the Driver Supervisor position." Doc. 34-6 at 31.

5

In response to interrogatories, however, American Body indicated that it had not eliminated any employee's position because of the implementation of the ELD recordkeeping system. American Body terminated two other employees since 2017, both of whom served as operations managers in American Body's Kansas City facilities and were in their mid- to late-fifties at the time of their termination.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by

admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

To prove a claim for age discrimination under the ADEA or IHRA, Mr. Anderson must demonstrate that the evidence, considered as a whole, would permit a reasonable factfinder to conclude that his age caused an adverse employment action. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see Carson v. Lake Cnty.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claims); *Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (analyzing age discrimination claims under the IHRA in accordance with the framework for claims under the ADEA). Mr. Anderson's age discrimination claims require but-for causation, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), meaning "proof that the unlawful [discrimination] would not have occurred in the absence of the alleged wrongful action or actions of the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). Prior to *Ortiz*, courts distinguished between "direct" and "indirect" methods of analyzing discrimination claims. *Ortiz*, 834 F.3d at 763–64. *Ortiz*, however, eliminated this distinction and directed courts to ask "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . proscribed factor caused the discharge." *Id.* at 765. This does not mean that the Court cannot consider the traditional burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which American Body frames its argument. *See Ortiz*, 834 F.3d at 766 (noting that its decision does not overrule *McDonnell Douglas*). But because Mr. Anderson clarifies in his response that he does not seek to use *McDonnell Douglas*' burden-shifting test to prove his claims, the Court only considers the evidence as a whole in

addressing whether a reasonable factfinder could find that Mr. Anderson's age caused his termination. *See id.* at 765–66.

Before reaching the causation question, the Court must first address the parties' disagreement as to who made the termination decision. The parties agreed in their Joint Statement of Undisputed Material Facts that Mr. Pape made the decision to terminate Mr. Anderson with Ms. Pape and Mr. Kozub. Doc. 34 ¶ 40. In its reply to the motion for summary judgment, however, American Body attempts to distance itself from this admission, taking the position that Mr. Pape "was a mere consultant for American Body that was *not* a supervisor and did *not* take part in the decision to terminate Mr. Anderson." Doc. 46 at 2. Although Mr. Pape, Ms. Pape, and Mr. Kozub's testimony on the question conflicts, given American Body's concession in the Joint Statement that Mr. Pape played a role in the decision, as well as record evidence supporting this conclusion, a reasonable jury could count Mr. Pape among the relevant decisionmakers, and so the Court treats all three individuals as the decisionmakers for purposes of its causation analysis.

Mr. Anderson may demonstrate causation through evidence of, for example, comments or animus toward his protected group, suspicious timing, more favorable treatment of similarly situated employees, or pretextual reasons given for his termination. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) ("We have identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment."). Addressing pretext first, "[p]retext requires more than showing that the decision was mistaken, ill considered or foolish, and so long

8

as the employer honestly believes those reasons, pretext has not been shown." *Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (citation omitted). Mr. Anderson can "demonstrate pretext directly by showing that 'a discriminatory reason more likely motivated' his termination, or indirectly by showing that [American Body's] explanations are 'unworthy of credence.'" *Senske v. Sybase*, 588 F.3d 501, 507 (7th Cir. 2009) (citation omitted). In determining whether an employer's explanation is honest, courts look to the reasonableness, not the accuracy, of the explanation. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 492 (7th Cir. 2008); *see also Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered."). "At the end of the day, the question is simply whether 'the same events would have transpired' if [Mr. Anderson] 'had been younger than 40 and everything else had been the same.'" *Senske*, 588 F.3d at 507 (quoting *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994)); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 465 (7th Cir. 2014).

American Body has presented shifting explanations for Mr. Anderson's termination. It does not appear that Mr. Pape or Mr. Kozub gave Mr. Anderson a reason for his termination at the time it occurred. Several weeks later, in response to a letter from Mr. Anderson's counsel, Ms. Pape responded that American Body terminated Mr. Anderson because of "changes in Federal law which mandated the implementation of ELD record keeping for Commercial Vehicle drivers which eliminated the Driver Supervisor position." Doc. 34-6 at 31. And at their depositions, Mr. Pape, Ms. Pape, and Mr. Kozub testified that they terminated Mr. Anderson because he did not have an interstate CDL. Finally, to support summary judgment, American Body added another reason, that Mr. Anderson admitted to getting into two accidents while driving American Body vehicles, an unacceptable activity according to American Body's

9

employee manual. These shifting explanations, as well as the fact that American Body appears to be engaging in the post hoc rationalization of Mr. Anderson's termination, allow for an inference of pretext. *See Lange v. Anchor Glass Container Corp.*, No. 22-2902, 2023 WL 4449211, at *2–3 (7th Cir. July 11, 2023) ("'flagrant' inconsistencies in an employer's proffered nondiscriminatory reasons for an employment action" as well as "after-the-fact rationalization" of the decision can support an inference of pretext); *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013) (a court may infer pretext from the shifting or inconsistent explanations an employer gives for a challenged employment action).

Further, drawing all inferences in Mr. Anderson's favor, a reasonable jury could find that American Body's stated reasons amount to pretext. For example, only as part of this litigation did American Body suggest that Mr. Anderson's two accidents in 2015 and 2016 provided a basis for his termination, but neither accident resulted in any disciplinary action, nor did any decisionmaker testify that they took Mr. Anderson's accident history into account when making the termination decision. As for the automation of part of Mr. Anderson's job responsibilities, Mr. Anderson testified that he had not performed manual logging for several years before his termination and that, when he did it, it only took up several hours per month. Mr. Pape also testified that he only learned of this alleged basis for Mr. Anderson's termination after Mr. Anderson hired counsel to represent him in proceedings related to his termination. And during discovery, American Body failed to identify Mr. Anderson as an individual it terminated due to implementation of this system in response to one of Mr. Anderson's interrogatories, denying that it had terminated anyone for this reason. Finally, with respect to the change in Mr. Anderson's CDL classification, although American Body represents that it only learned of this change in the days leading up to Mr. Anderson's termination, Mr. Anderson testified that they learned of this

10

change at the time it occurred, prior to 2017, and acquiesced to the change, allowing Mr. Anderson to only drive locally while the remaining two drivers drove interstate. And despite American Body's representation in its reply brief that "as soon as American Body learned from its insurance company that Anderson's driver's license was intrastate and not interstate, American Body's decisionmakers made the decision to terminate" Mr. Anderson, Doc. 46 at 3, the only evidence in the record to support this is a post-termination email from American Body's insurance company, see Doc. 34-6 at 35 (email dated June 2, 2021).[3] Under Mr. Anderson's version of the facts, a reasonable jury could conclude that American Body found the change in CDL classification, Mr. Anderson's driving history, and the reduction in his job responsibilities tolerable for a number of years and only decided later to use these issues as pretext to terminate his employment for unlawful reasons.

As further evidence of causation, Mr. Anderson points to his testimony that several weeks before his termination, Mr. Pape told Mr. Anderson that he "was getting too old," Doc. 34-2 at 18, and that Mr. Anderson would "have to leave before" the end of the year, when Mr. Anderson indicated he planned to retire, *id.* at 19.[4] Mr. Pape denies making any such comments, but at this stage, the Court must construe all facts and draw all reasonable inferences in Mr. Anderson's favor as the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[3] When asked to explain the discrepancy in timing, Ms. Pape testified that she had received a prior notification from the insurance company. Doc. 34-6 at 10. Nonetheless, American Body did not submit any earlier notification in connection with its motion for summary judgment, despite the fact that Mr. Anderson requested that American Body turn over any such evidence in response to Ms. Pape's representation.

[4] American Body argues that Mr. Anderson alleged in his complaint that Mr. Pape told him that he was "too old to drive" but that Mr. Anderson never testified that such a statement occurred, leaving Mr. Anderson with no admissible evidence as to Mr. Pape's alleged discriminatory animus. Doc. 33 at 11–12. While not the exact wording used in Mr. Anderson's complaint, Mr. Anderson did testify that Mr. Pape told him he "was getting too old" and that Mr. Pape did not want him driving any company vehicles. Doc. 34-2 at 18. American Body cannot argue that Mr. Pape's statements amount to inadmissible hearsay at this stage given that the record suggests that Mr. Pape's statements can be attributed to American Body pursuant to Federal Rule of Evidence 801(d)(2).

Undoubtedly, such a remark, coming just a few weeks before the termination action, could contribute to the inference that an unlawful animus caused Mr. Anderson's termination.[5] *See Joll*, 953 F.3d at 935 ("A remark or action by a decision-maker reflecting unlawful animus may be evidence of his or her attitudes more generally."). Therefore, because factual disputes exist as to whether American Body terminated Mr. Anderson because of his age, Mr. Anderson's claims must proceed to trial.

## CONCLUSION

For the foregoing reasons, the Court denies American Body's motion for summary judgment [32].

Dated: August 16, 2023

_____
SARA L. ELLIS
United States District Judge

---

[5] American Body argues that even assuming that Mr. Pape made comments about Mr. Anderson's age, they did not occur at the time of his termination and so cannot support a finding of animus. While the passage of several weeks between the comments and Mr. Anderson's termination may weaken the inference of causation, it does not preclude Mr. Anderson from using Mr. Pape's comments to suggest age discrimination. *See Malin v. Hospira, Inc.*, 762 F.3d 552. 560 (7th Cir. 2014) ("We reiterate what we have said consistently and repeatedly in retaliation cases stretching back more than a decade: a long time interval between protected activity and adverse employment action may weaken but does not conclusively bar an inference of retaliation. Rather, if the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support her claim." (citations omitted)).

12